Opinion for the court filed by Circuit Judge DYK. Dissenting opinion filed by Circuit Judge PLAGER.
DYK, Circuit Judge.
Sharp Electronics Corporation (“Sharp”), a federal supply contractor, submitted a termination compensation claim to the Department of the Army contracting officer (“CO”), and thereafter brought a Contracts Dispute Act (“CDA”) claim before the Armed Services Board of Contract Appeals (“ASBCA”). Sharp alleged that because the Army failed to exercise the entirety of the last option year under a delivery order, Sharp was entitled to premature discontinuance fees under its General Services Administration (“GSA”) schedule contract. The ASBCA dismissed Sharp’s appeal for lack of subject-matter jurisdiction, concluding that the Federal Acquisition Regulation (“FAR”), does not permit ordering agency COs to decide disputes pertaining to schedule contracts. We agree that under FAR 8.406-6, only *1369 the GSA CO may resolve disputes that, in whole or in part, involve the interpretation of disputed schedule contract provisions. Because Sharp’s claim turns on such a dispute, it must be submitted to the GSA CO, and the ASBCA has no jurisdiction. We therefore affirm.
Background
I
Historically, government agencies entered procurement contracts and purchased supplies and services on an individual basis. Contract disputes were initially directed to the agency contracting officer, and appeals went to an agency Board of Appeals under the contract’s disputes clause, or, if the contract had no pertinent clause, to a district court or what is now the Court of Federal Claims. See generally U Report of the Commission on Government Procurement 11-28 (1972); Joel P. Shedd, Jr., Disputes and Appeals: The Armed Services Board of Contracts Appeals, 29 Law & Contemp. Probs. 39 (1964).
Over time, federal contracting became more centralized. The Federal Property and Administrative Services Act of 1949, Pub.L. No. 81-152, 63 Stat. 377, created the GSA to standardize federal procurement processes and procure, store, and distribute supplies to federal agencies. See generally James F. Nagle, A History of Government Contracting, 450-52 (2d ed.1999); 3 Report of the Commission on Government Procurement 10-11; 27-37 (1972). Under the current version of the GSA Schedules Program, also called the Federal Supply Schedule Program or Multiple Award Schedule Program, see FAR 8.402(a), GSA “acts as the contracting agent” for the federal government, negotiating base contracts with suppliers of commercial products and services. Multiple Award Schedule Procurement, 47 Fed. Reg. 50,242-244 (Nov. 5, 1982). Each supplier publishes an Authorized Federal Supply Schedule Pricelist listing the items offered pursuant to its base contract, as well as the pricing, terms, and conditions applicable to each item. See FAR 8.402(b). Individual agencies issue purchase orders under the base contract as needed. See FAR 38.101(a); 8.405-1. The terms of the base contract, referred to as the “schedule” contract, are incorporated by reference into the order.
Schedule contracts are intended to simplify the acquisition process. However, they have generated jurisdictional uncertainty with respect to disputes, which may involve (1) the correct interpretation of the schedule contract; (2) the correct interpretation of the agency’s order; (3) the facts relating to the parties’ performance; or (4) some combination of these issues. Prior to 2002, the regulations established that only the schedule office CO (here, the GSA CO) could issue a final decision in a dispute pertaining to an order under a schedule contract. See FAR 8.405-7 (2000) (“The ordering office shall refer all unresolved disputes under orders to the schedule contracting office for action under the Disputes clause of the contract.”).
Effective July 2002, the FAR was amended,[1] authorizing ordering COs to resolve certain “disputes arising from performance of the order.” FAR 8.405-7(a)(l)(i) (2002); see also Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items (final rule), 67 Fed.Reg. 43,514, 43,514 (June 27, 2002). The current FAR provision is *1370 set forth below. As before, the GSA CO has sole authority over the schedule contract; the ordering CO must still refer disputes “pertaining to the terms and conditions of schedule contracts” to the schedule CO for a decision. FAR 8.406-6(b) (2012). Because the parties here dispute the interpretation of both the schedule contract and the purchase order, the question is which CO has jurisdiction under the FAR.
II
On September 18, 2001, Sharp and GSA entered into a schedule contract, Multiple Award Schedule Contract No. GS-25F0037M (“Sharp’s Schedule Contract”), which allowed agencies to lease or purchase office equipment and supplies from Sharp’s Schedule Pricelist. The pricelist included Special Item Number (“SIN”) 51-58a, covering monthly lease plans for the operation and maintenance of copier equipment, and setting forth additional terms and conditions applicable to such leases, including provisions pertaining to payment, lease terms, the exercise of options, and early termination fees.
On December 1, 2005, the Army issued delivery order No. W91ZLK-06-F-0028 to Sharp “in accordance with and subject to terms and conditions” of Sharp’s Schedule Contract. J.A. 18. The order provided for a four-year lease of copier equipment, including one Base Year and three Option Years, with the last Option Year ending on December 1, 2009. Sharp’s Schedule Pri-celist stated that with respect to delivery order leases of this type, “the Government intends to exercise the renewal options contained herein and lease the Equipment for the entire Lease Term.” Option Years One and Two were exercised in full; on November 20, 2008, the Army and Sharp executed Modification No. P00011 (“Mod 11”), which “partially exercise[d] option year three” for six months. J.A. 3. The parties subsequently executed Modification No. P00012 (“Mod 12”), which extended the lease for three more months. The lease finally ended on August 31, 2009. Mods 11 and 12 were silent as to the reservation or release of claims associated with the modifications.
Sharp viewed the Army’s failure to fully exercise Option Year Three as a premature cancellation, entitling Sharp to fees under the termination provisions of its schedule contract. In January 2011, Sharp filed a formal claim with the Army CO, citing the termination fee provisions of its schedule contract, and seeking $67,928.63 in early termination fees (representing four times the base monthly charge for each unit). The Army CO did not respond, and did not refer Sharp’s claim to the GSA CO responsible for Sharp’s Schedule Contract. After sixty days, Sharp appealed the deemed denial of its claim to the ASBCA. See FAR 8.406-6(c).
The ASBCA “sua sponte[] raised the issue of its jurisdiction to decide th[e] appeal.” Sharp Elees. Corp., ASBCA No. 57583, 12-1 B.C.A. ¶ 34,903, at 171,621 (“ASBCA Decision”). The jurisdictional issue that concerned the ASBCA arose from the regulatory division of CO authority in disputes involving federal supply service contracts. Under the CDA, codified at 41 U.S.C. §§ 7101-7109, and its implementing regulations, the FAR, a contractor’s claim must be submitted in writing to the appropriate federal CO for a final decision. 41 U.S.C. § 7103(a)(1); see also FAR 52.233-1. As discussed above, in disputes involving schedule contracts, FAR 8.406-6, as amended, allocates authority among ordering and scheduling COs. The question here is whether FAR 8.406-6 authorized the Army CO to decide Sharp’s claim. If the Army CO was not authorized to decide the claim, the deemed denial was not a valid basis for ASBCA jurisdiction. *1371 Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed.Cir.1996); see also 41 U.S.C. § 7105(e)(1)(A) (defining ASBCA jurisdiction). The ASBCA concluded that its jurisdiction “turn[ed] upon whether or not this dispute pertains to the contract terms and conditions of the schedule contract or arises from performance of the [delivery order],” and invited the parties to brief the issue “in light of FAR 8.406-6(b).” ASBCA Decision, at 171,622.
The parties agreed that the termination fees Sharp sought were authorized, if at all, by provisions in Sharp’s Schedule Contract with GSA. Sharp invoked the “Premature Discontinuance Provisions” of its 2005 GSA-approved schedule pricelist. These provisions, set forth at Special Item Number 51-58a, ¶ 21N(2), and included in Modification No. 32 to Sharp’s Schedule Contract, stated in relevant part:
If the Government terminates a FMV lease prior to its expiration ... the Government shall pay all amounts due the Contractor as of that date and a “Premature Discontinuance Fee” (“PDF”). The PDF is the monthly equipment component, for each unit/aceessory being terminated times the number of months remaining in the FMV Lease.
For its part, the Army contended that because Mod 11 represented a bilateral agreement to shorten Option Year Three to six months, the lease was not terminated “prior to its expiration,” and the discontinuance provisions were inapplicable.
In their jurisdictional briefings to the ASBCA, both parties argued that the Army CO could resolve the dispute. The Army argued that the dispute pertained solely to the parties’ contractual obligations under Mod 11, an issue that could be decided by the Army CO responsible for the delivery order. Sharp argued that the relevant termination provisions needed only to be applied to the facts, and that this application constituted an issue of performance under the delivery order, which could be decided by the Army CO.
The ASBCA rejected both parties’ arguments. It determined that the “fundamental issue under this appeal is the applicability of the terms and conditions of the Schedule Contract” — i.e., the termination for convenience provisions — “not performance under the [delivery order].” ASBCA Decision, at 171,622. The ASBCA determined that it “d[id] not have jurisdiction to hear appeals from ordering activity COs where ‘the dispute ... is related solely to the validity and/or applicability of the terms and conditions of the’ schedule contract, not performance of the [delivery order].” Id. (quoting Sharp Elecs. Corp., ASBCA No. 54475, 04-2 BCA ¶ 32,704, at 161,796). Because “the Army CO lacked authority to resolve this dispute,” the ASBCA dismissed Sharp’s appeal. Sharp timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 7107(a)(1).
Discussion
In accordance with the CDA, 41 U.S.C. §§ 7101-7109, we review the ASBCA’s decisions on questions of law de novo. See 41 U.S.C. § 7107(b)(1); Ra-Nav Labs. v. Widnall, 137 F.3d 1344, 1346 (Fed.Cir.1998). “Whether or not the Board has jurisdiction is a question of law.” Arnold M. Diamond, Inc. v. Dalton, 25 F.3d 1006, 1010 (Fed.Cir.1994).
The CDA requires that “[e]ach claim by a contractor against the Federal Government relating to a contract shall be in writing,” and “shall be submitted to the contracting officer for a decision.” 41 U.S.C. § 7103(a)(l)-(2). “Under the CDA, a final decision by a CO on a ‘claim’ is a prerequisite for Board jurisdiction.” Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed.Cir.1995) (en banc). The CDA gives the ASBCA jurisdiction to “decide any appeal from a decision of a [CO] of the *1372 Department of Defense, the Department of the Army, the Department of the Navy, the Department of the Air Force, or the National Aeronautics and Space Administration relative to a contract made by that department or agency.” 41 U.S.C. § 7105(e)(1)(A). With certain exceptions not relevant here, the ASBCA’s counterpart, the Civilian Board of Contract Appeals (“CBCA”), has jurisdiction to decide appeals from decisions by COs of other agencies, including GSA. Id. at § 7105(e)(1)(B).
Pursuant to statutory mandate, the Federal Acquisition Regulatory Council is required to promulgate the FAR, “a single Government-wide procurement regulation,” 41 U.S.C. § 1303(a)(1); this regulation implements statutes like the CDA that concern federal procurement contracts, see Essex Electro Eng’rs, Inc. v. United States, 960 F.2d 1576, 1580-81 (Fed.Cir. 1992), overruled on other grounds by Reflectone, 60 F.3d at 1579.
As amended, FAR 8.406-6 distributes authority to resolve contract disputes with schedule contractors between the ordering agency CO and the GSA CO, depending on the nature of the dispute:
(a) Disputes pertaining to the performance of orders under a schedule contract.
(1) Under the Disputes clause of the schedule contract, the ordering activity contracting officer may-—
(i) Issue final decisions on disputes arising from performance of the order (but see paragraph (b) of this section); or
(ii) Refer the dispute to the schedule contracting officer.
(2) The ordering activity contracting officer shall notify the schedule contracting officer promptly of any final decision.
(b) Disputes pertaining to the terms and conditions of schedule contracts. The ordering activity contracting officer shall refer all disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution under the Disputes clause of the contract and notify the schedule contractor of the referral.
FAR 8.406-6 (2012) (emphases added).
The regulation clearly authorized the ordering CO to decide routine disputes about order performance not involving interpretation of the schedule contract, such as whether the contractor’s default was excusable. See FAR 8.406-4(b) (2012) (“If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate.”); see also Spectrum Healthcare Res., 2006-2 B.C.A. ¶ 33,-377, 165,469 (“FAR 8.406-4 ... authorized [the ordering] CO, in appropriate circumstances, to determine whether the default was excusable.”). However, the regulation also created uncertainty as to whether the ordering CO could decide disputes requiring interpretation of the schedule contract. See, e.g., BearingPoint, Inc. v. United States, 77 Fed.Cl. 189, 194 (2007) (the ordering CO could not resolve a dispute pertaining to an order under a schedule contract); United Partition Sys. v. United States, 59 Fed.Cl. 627, 635-37 (2004) (the GSA CO, not the agency CO, had sole authority to evaluate the contractor’s ex-cusability defense under the schedule contract); GTSI Corp. v. Equal Emp’t Opportunity Comm’n, CBCA Nos. 2718, 2719, 12-2 BCA ¶ 35, 141 (slip op. at 4-5) (noting that “FAR 8.406-6 proved problematic in several appeals, particularly where performance disputes require some interpretation or application of a[ schedule contract] clause,” and concluding that a “purely factual” dispute is appropriately addressed by the ordering CO).
On its face, FAR 8.406-6 does not authorize an ordering agency CO to issue *1373 decisions interpreting the schedule contract. Though the regulation allows ordering COs to “issue final decisions on disputes arising from performance of the order,” FAR 8.406 — 6(a)(1)(i), their authority is expressly restricted by “paragraph (b) of this section,” id. Paragraph (b) expressly requires that all “[disputes pertaining to the terms and conditions of schedule contracts” shall be referred to the GSA CO: “[t]he ordering activity contracting officer shall refer all disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution.” Id. at 8.406 — 6(b) (2004) (emphases added). “Shall” is “mandatory” language. Andersen Consulting v. United States, 959 F.2d 929, 932 (Fed.Cir. 1992); see also FAR 2.101 (“Shall denotes the imperative”). The regulation’s plain language leaves an ordering CO no discretion to interpret the schedule contract. FAR 8.406-6 thus requires that all cases requiring interpretation of the schedule contract must be resolved by a single entity — the GSA CO. Finally, the relevant regulatory history describes FAR 8.406-6(b) as authorizing ordering COs to decide only those “disputes pertaining solely to performance of schedule orders.” Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items, 65 Fed.Reg. 79,702, 79,702 (Dec. 19, 2000) (proposed rule) (emphasis added).
In theory, the FAR could provide for bifurcation — that is, the portion of a dispute relating to the schedule contract would be referred to the schedule contract CO, and the portion of a dispute requiring interpretation of the order would go to the agency CO. But this procedure would be highly inefficient, and the FAR evidently contemplates that a dispute that involves the interpretation of both contracts, as well as pertaining to performance of the order, would go to the scheduling CO. That is why the FAR allows the ordering CO to “[r]efer ... disputefs] [pertaining to the performance of the order] to the schedule contracting officer.” 8.406-6(a)(l)(ii).
Thus, we conclude that the FAR creates a bright-line rule — all disputes requiring interpretation of the schedule contract go to the schedule CO, even if those disputes also require interpretation of the order, or involve issues of performance under the order. “Bright line rules upon which the parties’ expectations may be firmly established” are particularly valuable in contracting. Bowsher v. Merck & Co., 460 U.S. 824, 841 n. 18, 103 S.Ct. 1587, 75 L.Ed.2d 580 (1983). Thé FAR and CDA were intended in part to promote uniformity, consistency, and fairness across all contracting agencies. See, e.g., Newport News Shipbuilding & Dry Dock Co. v. Garrett, 6 F.3d 1547, 1551 (Fed.Cir. 1993); FAR 1.102. Requiring that all schedule contracts must be construed by the GSA CO maintains a clear, predictable allocation of jurisdiction between agency contracting offices and GSA.
Furthermore, a bright-line rule here will maintain jurisdictional clarity among the Boards, which is particularly important with respect to contractors that supply both civilian and military agencies. If ordering COs could issue decisions interpreting suppliers’ schedule contracts, appeals to the Boards would produce two independent lines of interpretive caselaw: appeals from civilian agency ordering COs would go to the CBCA, while appeals from military ordering COs would go to the ASBCA.[2] See generally 41 U.S.C. *1374 § 7105(e) (defining the jurisdiction of the Boards). Because Board precedents do not bind other Boards, this result would undermine the policy of consistency embodied in the FAR and CD A.
We hold that FAR 8.406-6 does not authorize an ordering CO to decide a dispute requiring interpretation of schedule contract provisions, in whole or in part, regardless of whether the parties frame the dispute as pertaining to performance.[3] However, the ordering CO is certainly authorized to construe the language of the order (or its modifications). Because an order’s details — not merely price, quantity, and specifications, but also permissible variation in quality or quantity, hours and location of delivery, discounts from schedule pricing, etc.[4] — are arranged between the schedule contractor and the ordering CO, the ordering CO is able to construe these commonly disputed terms as long as the dispute does not involve interpretation of the schedule contract. We also see no reason why an ordering CO resolving a dispute cannot apply the relevant provisions of the schedule contract, as long as their meaning is undisputed. For example, an ordering CO who resolves a dispute over whether goods are conforming may apply schedule contract provisions governing replacement of nonconforming goods. See FAR 8.406-3(a) (2012) (“If a [schedule] contractor delivers a supply or service, but it does not conform to the order requirements, the ordering [CO] shall take appropriate action in accordance with the inspection and acceptance clause of the contract, as supplemented by the order.”). The dispute only need go to the GSA CO if it requires interpretation of the schedule contract’s terms and provisions.
In this case, the dispute turns on whether the Army incurred premature discontinuance fees when it did not fully exercise Option Year Three. These fees are a contractual remedy provided in Sharp’s Schedule Pricelist, set forth in Modification No. 32 to Sharp’s Schedule Contract. As discussed above, the Army argues that the discontinuance provisions are inapplicable because Mod 11 bilaterally specified a new end date for Option Year Three before it was exercised, so there was no premature discontinuance. Sharp does not argue that the Army was contractually obligated to exercise Option Year Three. Rather, Sharp contends that the Army’s partial exercise of Option Year Three constituted a premature discontinuance under the relevant contractual provisions. The *1375 parties’ dispute does not merely pertain to the facts of the dispute — indeed, the facts here are undisputed. Rather, the disagreement concerns whether a partial exercise (or a bilateral modification) is a premature discontinuance as defined by Sharp’s Schedule Contract. It is clear that this requires construction of Mod 11, but more importantly, it also requires interpretation of the relevant provisions of Sharp’s Schedule Contract. Thus, the dispute in this case must be decided by the GSA CO.[5]
We recognize that the distribution of contracting officer authority (compelled by the way FAR 8.406-6 is written) is less than perfect. The old regime left no authority with the ordering CO, even where no genuine dispute under the schedule contract existed. The new regime vests the ordering CO with authority to decide contract disputes, so long as the disputes do not require interpretation of the schedule contract. This is so even though many aspects of a dispute requiring interpretation of the schedule contract can involve matters on which the ordering CO clearly has a better command of the facts than would the schedule contract CO. But any perceived fault in the distribution of contract officer authority derives from the carefully articulated language of FAR 8.406-6. If expanded authority for the ordering CO is desired, FAR 8.406-6 can be amended to that end.
Sharp correctly notes that the Army CO failed to refer Sharp’s claim to the GSA CO as required by FAR 8.406-6(b). But Sharp’s contention that this failure waives any jurisdictional deficiencies is meritless, because an essential prerequisite of Board jurisdiction — a final decision by an authorized CO — is absent, see Reflectone, 60 F.3d at 1575, and jurisdictional deficiencies cannot be waived.
Because Sharp’s claim cannot be resolved without interpreting the premature discontinuance provisions in Sharp’s Schedule Contract, the Army CO has no authority to decide the claim or issue a deemed denial, and the ASBCA lacks jurisdiction of Sharp’s appeal. Since the CDA’s six-year statute of limitations has not yet run, see 41 U.S.C. § 7103(a)(4)(A), Sharp may timely resubmit its claim to the GSA CO, and appeal if it is dissatisfied with the result.
AFFIRMED

. At the time of amendment, the applicable regulation was FAR 8.405-7; it has since been renumbered as FAR 8.406-6. See Federal Acquisition Regulation; Federal Supply Schedules Services and Blanket Purchase Agreements (BPAs), 69 Fed.Reg. 34,231, 34,-239 (June 18, 2004).

. To be sure, claimants can avoid the Boards entirely by appealing to the Court of Federal Claims (“CFC”), which has a mechanism to maintain consistency: if multiple suits arising from a contract are pending in the CFC and one or more Boards, the CFC may order their *1374 transfer or consolidation. See 41 U.S.C. § 7107(d).

. To the extent the ASBCA’s caselaw might be read to endorse ASBCA jurisdiction over all disputes not " ‘related solely to the validity and/or applicability of the terms and conditions of the' schedule contract,” see ASBCA Decision, at 171,622 (quoting Sharp, ASBCA No. 54475, at 161,796) (emphasis added), we disapprove that reading. Any claim which disputes the interpretation of the terms and conditions of the schedule contract must go to the scheduling CO, even if there are other disputed issues as well.

. FAR 8.406-1 instructs that orders "shall include the following information in addition to any information required by the schedule contract”: free on board (FOB) delivery point (i.e., origin or destination); discount terms; delivery time or period of performance; quantity and any variation in quantity; number of units; unit price; total price of order; points of inspection and acceptance; other pertinent data (e.g., delivery instructions or receiving hours and size-of-truck limitation); marking requirements; and level of preservation, packaging, and packing. FAR 8.406-1(d) (emphasis added). Furthermore, the delivery order must include "a statement of work for services, when required, or a brief, complete description of each item (when ordering by model number, features and options such as color, finish, and electrical characteristics, if available, must be specified).” FAR 8.406-1 (d)(8); see also FAR 8.405-2(b) (defining the contents of a statement of work).

. Here, it does not matter if the provisions of Sharp’s Schedule Contract are incorporated in the order expressly or by reference; either way, the provisions are those of the schedule contract agreed to by Sharp and the GSA CO.