# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Canon Solutions America, Inc. ) ASBCA No. 59540
)
Under Contract No. W911SE-04-A-0007 )

APPEARANCES FOR THE APPELLANT: Andrew K. Wible, Esq.
Andrew J. Mohr, Esq.
Cohen Mohr LLP
Washington, DC

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Cameron R. Edlefsen, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant elected the Board's accelerated procedure under Rule 12.3 for appeals under $100,000. Subsequent to that election, the government filed a motion to dismiss for lack of subject matter jurisdiction. Appellant has joined in the motion. For the reasons stated below, we dismiss the appeal.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Sometime prior to 23 February 2004, the General Services Administration (GSA) entered into a schedule contract with the predecessor-in-interest to appellant Canon Solutions America, Inc., (CSA). (The Rule 4 file contains the version of the schedule contract that was in effect from October 2006 through September 2011 (R4, tab 3)). The schedule contract allows agencies to lease or purchase office equipment from CSA (*id.*). Pursuant to the schedule contract, in February 2004, the Southern Region Contracting Center East, Army Contracting Agency (Army), entered into a Blanket Purchase Agreement (BPA) with CSA (R4, tab 1). Pursuant to this BPA, on 2 February 2009, the Army issued a delivery order for the lease of copiers (R4, tab 5).

2. The merits issue in this case is whether the Army is required to pay CSA for removal of the copiers upon the expiration of the lease. The schedule contract, BPA, and delivery order all contain provisions that relate to the removal of the copiers, but these provisions are not entirely in sync. The schedule contract states in a section entitled "GENERAL INFORMATION" that "Removal Charges (if applicable) will be

charged for all removal of equipment and accessories" (R4, tab 3 at 6, ¶ 11). Later, in a section entitled "LEASE TO OWNERSHIP [] AND LEASE WITH OPTION TO OWN []," the schedule contract states: "The Ordering Agency is responsible for removal charges. Unless specified under the schedule contract, removal charges will be administered outside the scope of the contract." (*Id.* at 11, ¶ 17)

3. The BPA and delivery order contain (with slightly different wording) a statement that: "Removal of copiers that are not replaced by another volume band and not due to under-utilization or over-utilization will be made in accordance with the BPA holders GSA schedule prices" (R4, tab 1 at 4, ¶ 14c, tab 5 at 11, ¶ C.3.1). (The BPA defines various volume bands numbered I to VI that are defined by the number of copies per minute and per month that they can produce, among other things (R4, tab 1 at 9-12)). Despite this reference to a schedule price for removal, it is undisputed that there is no such price for the removal of the copiers. In the event of an inconsistency between the schedule contract and the BPA, the delivery order stated that the BPA would take precedence unless otherwise determined by the contracting officer.

4. The parties exchanged various communications concerning removal charges at lease expiration (R4, tabs 15-19). During those exchanges, CSA asserted, in part, that the schedule contract required the Army to pay CSA for the removal (R4, tab 17 at 4).

5. An Army contracting officer issued a final decision dated 30 June 2014, denying what he referred to as CSA's "propos[ed] pickup charges" for the copiers (R4, tab 20). The contracting officer apparently interpreted the BPA and delivery order to mean that the Army is not required to pay removal charges if they are replaced by copiers from another company (*id.* at 2-3). The contracting officer did not address CSA's contention that the schedule contract required the Army to pay for removal, nor did he submit the dispute to a GSA contracting officer for a decision.

DECISION

Because schedule contracts such as the one at issue involve relationships between a contractor and a schedule contracting agency (the GSA) and an ordering agency, both of which are acting through its own contracting officer, one question that arises is: which contracting officer has jurisdiction over disputes? The Federal Acquisition Regulation (FAR) provides that the ordering agency contracting officer may issue decisions "on disputes arising from performance of the order" but must refer disputes involving the terms and conditions of the schedule contract to the schedule contracting officer. FAR 8.406-6(a)–(b).

The Court of Appeals for the Federal Circuit recently concluded that this FAR provision established a bright-line rule: "all disputes requiring interpretation of the

2

schedule contract go to the schedule CO, even if those disputes also require interpretation of the order, or involve issues of performance under the order." *Sharp Electronics Corp. v. McHugh*, 707 F.3d 1367, 1373 (Fed. Cir. 2013). This is so even if the parties frame the dispute as pertaining to performance. The ordering contracting officer is authorized to construe the language of the order. He or she can apply the provisions of the schedule, but only if their meaning is undisputed. *Id.* at 1374.

In this case, the Army contracting officer concluded that the dispute was governed by the terms of the BPA and, thus, did not refer the dispute to a schedule contracting officer. Although it is not entirely clear, it appears that the Army contracting officer focused upon paragraph 14c of the BPA, which provides "Removal of copiers that are not replaced by another volume band and not due to under-utilization or over-utilization will be made in accordance with the BPA holders GSA schedule prices." (SOF ¶¶ 3, 5) He concluded from this provision and others in the BPA that the Army did not have to pay removal charges if, at the end of the lease, it replaced the copiers with equipment from another vendor (SOF ¶ 5).

CSA disagrees with the Army contracting officer's interpretation of paragraph 14c. It reads this provision to mean that removal of copiers that are "(1) not replaced by another volume band; and (2) not due to over or under-utilization," are to be paid in accordance with the schedule contract (compl. ¶¶ 23-24) (emphasis added). Because both of these conditions have not been met, (for example, there is no allegation of over or under-utilization), CSA contends that it is entitled to payment.

In response, the Army has filed a motion to dismiss in which it now contends that its contracting officer did not have the authority to issue a final decision because resolution of the dispute requires interpretation of the terms of the schedule contract, which would also mean that this Board lacks jurisdiction. In its motion, as clarified by discussions during a status conference on 28 October 2014, the Army points to two aspects of the schedule contract. First, to the extent that the BPA and delivery order provide that removal shall be made in accordance with the BPA holder's schedule prices (SOF ¶ 2), the Army observes that the schedule contract contains no price for removal of the copiers. The Army contends that this indicates that there was no agreement for CSA to be paid for removal. Second, while the schedule contract on the one hand states that the ordering agency is responsible for removal charges, it also provides that "removal charges will be administered outside the scope of the contract" (*id.*). It is not immediately clear to us what the parties intended when they provided for such administration outside the scope of the contract. In any event, we construe the Army to be making a non-frivolous argument that a GSA contracting officer must sort out the fact that the schedule contract: 1) requires the ordering agency to pay for removal; but 2) does not contain a price for removal (nor does the BPA, nor the delivery order); and 3) the schedule states that the removal charges will be administered outside the scope of the contract but the schedule does not immediately

explain what this means. We conclude that this dispute cannot be resolved without addressing at least some issues concerning the interpretation of the schedule contract.

After reviewing the government's motion to dismiss and hearing the government's arguments at a status conference the Board conducted on 28 October 2014, CSA filed a response to the motion, in which it stated that it has concluded that "the Government's proposed arguments will divest the Board of jurisdiction" (app. resp. at 1). It stated that it "joins in the Government's motion to dismiss this appeal" (*id.* at 2).

Accordingly, because a GSA contracting officer has not issued a final decision, and the appeal of any such decision would be to the Civilian Board of Contract Appeals, we do not possess jurisdiction. Nevertheless, we urge the Army to submit this dispute to a GSA contracting officer posthaste.

## CONCLUSION

This appeal is dismissed.

Dated: 5 November 2014

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

4

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59540, Appeal of Canon Solutions America, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
