ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| DLT Solutions, LLC | )  ASBCA No. 63069 |
| | ) |
| Under Contract No.  W52P1J-18-A-0001 | ) |
|     Order No.  M67854-19-F-4035 | ) |

APPEARANCES FOR THE APPELLANT:          Thomas O. Mason, Esq.
                                        Joseph R. Berger, Esq.
                                        Mona Adabi, Esq.
                                        Brian Lamb, Esq.
                                          Thompson Hine LLP
                                          Washington, DC


APPEARANCES FOR THE GOVERNMENT:  Craig D. Jensen, Esq.
                                    Navy Chief Trial Attorney
                                 Antonio Robinson, Esq.
                                    Trial Attorney


OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE GOVERNMENT'S
MOTIONS TO DISMISS

This appeal involves an order by the United States Marine Corps (Ordering Activity) under a blanket purchase agreement awarded from a General Services Administration (GSA) Federal Supply Schedule contract for a software license and associated maintenance and support.  The order was for a base year and four option years. It also contained provisions that required the Ordering Activity to exercise the options so long as there was a bona fide need for the software, and certify that the Ordering Activity deleted the software once the order expired.  However, the Ordering Activity declined to exercise the options, and did not certify that it deleted the software.  Appellant DLT Solutions, LLC (DLT) raises breach of contract, breach of the covenant of good faith and fair dealing, superior knowledge, fraudulent inducement, and estoppel claims.

The Ordering Activity has moved to dismiss all of the claims for lack of jurisdiction, arguing that there was not an adequate claim because DLT should have presented its claim to a GSA contracting officer (CO), and not to an Ordering Activity CO (Ordering CO).  In the alternative, the Ordering Activity moves to dismiss the superior knowledge, fraudulent inducement, and the estoppel claims for lack of jurisdiction because they are a new claim, allege fraud, and seek promissory estoppel

respectively.  Finally, the Ordering Activity moves to dismiss all of the claims for failure to state a claim.

For the reasons discussed below, we deny the motion to dismiss all of the claims because DLT properly presented its claim to the Ordering CO.  However, we grant the motion to dismiss the superior knowledge claim and the fraudulent inducement claim for lack of jurisdiction because they are new claims that DLT did not present to the Ordering CO.[1]  We also strike the estoppel claim because a portion of that claim seeks specific performance or injunctive relief, and the remainder of the claim does not assert an independent basis for entitlement to relief.  Finally, we deny the motion to dismiss for failure to state a claim.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS</u>

I.  <u>The Contracts</u>

1.  From April 11, 2016 through April 10, 2021, DLT entered into Federal Supply Schedule Contract GS-35F-267DA (Schedule Contract) with the GSA for various computer software services, including services related to Quest software (gov't br. ex. 1 at 1-2).[2]  The Schedule Contract contained several provisions that the Ordering Activity argues are relevant.  First, the Schedule Contract contained an Annual Funding Provision, which stated that:

> When annually appropriated funds are cited on a maintenance order, the period of maintenance shall automatically expire on September 30th of the contract period, or at the end of the contract period, whichever occurs first.  Renewal of a maintenance order citing the new appropriation shall be required, if maintenance is to continue during any remainder of the contract period.

(*Id*. at 19)  Second, the Schedule Contract contained a Payments Provision, which stated that:

> For firm-fixed price orders the ordering activity shall pay the Contractor, upon submission of proper invoices or vouchers,

---

[1] While the Ordering Activity only moved to dismiss the superior knowledge claim on the grounds that it was a new claim (mot. at 14-18), we also dismiss the fraudulent inducement claim pursuant to our authority to address jurisdictional issues *sua sponte*, *Sharp Elec. Corp. v. McHugh*, 707 F.3d 1367, 1370 (Fed. Cir. 2013), because it also is a new claim for the reasons discussed above.

[2] All citations to exhibit 1 to the Ordering Activity's brief are to the PDF page number.

the prices stipulated in this contract for service rendered and accepted. Progress payments shall be made only when authorized by the order. For time-and-materials orders, the Payments under Time-and-Materials and Labor-Hour Contracts at FAR 52.212-4 (MAR 2009) (ALTERNATE I – OCT 2008) (DEVIATION I – FEB 2007) applies to time-and-materials orders placed under this contract. For labor-hour orders, the Payment under Time-and-Materials and Labor-Hour Contracts at FAR 52.212-4 (MAR 2009) (ALTERNATE I – OCT 2008) (DEVIATION I – FEB 2007) applies to labor-hour orders placed under this contract.

(*Id*. at 60) Finally, the Schedule Contract contained an Order of Precedence Provision, which stated that the Schedule Contract will take precedence over any order in the event of a conflict (*id*. at 43, 52, 58, 62).

2. On November 20, 2017, the United States Army Contracting Command awarded Blanket Purchase Agreement No. W52P1J-18-A-0001 (BPA) to DLT from the Schedule Contract to reduce the administrative cost of acquiring commercial software and services, including services related to Quest software (R4, tab 1 at 1-3). The BPA included the Transaction Software Agreement with Quest, which stated that "[c]ancellation of Maintenance Services for perpetual Licenses for On-Premise Software will not terminate Customer's rights to continue to use the On-Premise Software" (R4, tab 1.1 at 19). The BPA also included a Department of Defense (DOD) Electronically Stored Information Supplement to the GSA Exclusive Use License Agreement (EULA), which contained a Re-Use Provision stating that "[n]othing in this License Grant or elsewhere in this EULA or in other documents concerning this license or the software licensed herein shall preclude Licensee from licensing other identical, similar or competitive software from other Publishers or Resellers at any time and for any reason whatsoever" (R4, tab 1.2 at 24, 28).

3. On January 29, 2019, the Ordering Activity published Solicitation No. M67854-19-Q-4035 (Solicitation) for Quest perpetual licenses and associated maintenance and support (app. supp. R4, tab 1-2 at 28-35).

4. On March 12, 2019, DLT submitted its quote (Quote) to the government. It was the only potential contractor to do so. (R4, tab 2 at 69) The Quote required that the Order contain a Bona Fide Needs Provision, stating that "[i]t is the intent of the Government by placing this Order to exercise each renewal option so long as the bona fide needs of the Government for the products or functionally similar products continues

3

to exist and the requirements of FAR 17.207 are satisfied" (*id*. at 74). The Quote also contained a Certification Provision, which stated that:

> Within (30) days after the date of expiration or termination of any Order in which the Government has not exercised a purchase option to acquire the software license, the Government shall, at its own risk and expense, have the software removed. In connection with such removal of software, the Government shall certify in writing to the Contractor that the Government has (a) deleted or disabled all files and copies of the software from the equipment on which it was installed; [and] (b) has no ability to use the returned software.

(*id*.).

5. Based upon the solicitation and the Quote, the Ordering Activity awarded Order No. M67854-19-F-4035 (Order) on the BPA to DLT for Quest perpetual licenses and associated maintenance and support (R4, tab 2 at 31-39). The Order was for one base year and four option years (*id*. at 33-59). The Order also incorporated the Quote (*id*. at 66). The Order was a firm fixed price (FFP) contract, and not a time-and-material or labor-hour order (*id*. at 33-39). Moreover, the Ordering Activity has not established that the Order cited annual appropriated funds or that it acquired the software subject to an agreement requiring it to indemnify others (*id*. at 31-77).

## II. Performance

6. After DLT performed the base year, the Ordering Activity did not exercise the first option (compl. ¶¶ 58-60).

7. DLT alleges that the Ordering Activity has not certified that it deleted or disabled all files and copies of the software from the equipment on which it was installed, or that it has no ability to use the returned software (Certification) (compl. ¶ 50).

## III. Procedural History

8. On March 22, 2021, DLT presented a claim to the Ordering CO (R4, tab 4 at 80). The claim asserted that the Ordering Activity breached the Order by failing to exercise the options when there was a bona fide need for the Quest software or a functionally similar product, and failing to provide a Certification (*id*. at 81-83). The Claim did not allege that the Ordering Activity knew pre-award that it intended to not exercise the options, or that the Ordering Activity failed to disclose, or misrepresented, any such knowledge (*id*. at 80-89).

9.  The Ordering CO issued a CO final decision (COFD) on July 23, 2021 (R4, tab 6 at 145).

10.  DLT then filed this appeal.  The complaint alleges five counts.  First, the complaint alleges that the Ordering Activity breached the Bona Fide Needs Provision and the covenant of good faith and fair dealing by failing to exercise the options when there was a bona fide need for the Quest software or a functionally similar product (compl. ¶¶ 133-36).  Second, the complaint alleges that the Ordering Activity breached the Certification Provision and the covenant of good faith and fair dealing by failing to provide a Certification (*id*. at ¶¶ 137-41).  Third, the complaint alleges that the Ordering Activity fraudulently induced DLT to enter into the Order by misrepresentation pre-award that it intended to exercise the options if there was a bona fide need, knowing that it intended not to exercise the options (*id*. at ¶¶ 146-47).  Fourth, the complaint alleges that the Ordering Activity should be estopped from arguing that the Bona Fide Needs Provision or the Certification Provision was a nullity, from arguing that either provision was superseded by other contractual language, and from using functionally similar products when a bona fide need continues to exist (*id*. at ¶ 154).  Fifth, the complaint alleges that the Ordering Activity acted with superior knowledge when it failed to disclose pre-award its knowledge that it intended not to exercise the options (*id*. at ¶ 161-62).  There is no allegation that there was an implied-in-fact contract, apart from the implied covenant of good faith and fair dealing.  (*Id*. at ¶¶ 1-163)

DECISION

As discussed in greater detail below, we deny the Ordering Activity's motion to dismiss all counts for failure to present a claim to the GSA CO because this dispute does not require interpretation of the Schedule Contract, so DLT properly presented its claim to the Ordering CO.  However, we grant the motion to dismiss the superior knowledge and fraudulent inducement claims because those are new claims that DLT failed to present to the Ordering CO.  We also strike the estoppel claim because a portion of that claim seeks specific performance or injunctive relief, and the remainder of the claim does not assert an independent basis for entitlement to relief.  Finally, we deny the motion to dismiss for failure to state a claim because DLT plausibly alleges a claim.

I.  The Failure of DLT to Present a Claim to the GSA CO does not Deprive the Board of Jurisdiction

The failure of DLT to present a claim to the GSA CO does not deprive the Board of jurisdiction over this appeal.  Under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-09, we only possess jurisdiction over a claim if a contractor presented that claim to an authorized CO, and the CO issued a final decision on that claim.  41 U.S.C. § 7103(a)(1)-(3); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (*en banc*).  As a result, when an appeal involves an order from a schedule contract, we do not possess

5

jurisdiction when a contractor presents a claim to the wrong CO. *Sharp Elec. Corp. v. McHugh*, 707 F.3d 1367, 1372-74 (Fed. Cir. 2013); *see also* 48 C.F.R. § 8.406-6. In determining who is the wrong CO:

> FAR 8.406-6 does not authorize an ordering CO to decide a dispute requiring interpretation of schedule contract provisions, in whole or in part, regardless of whether the parties frame the dispute as pertaining to performance. However, the ordering CO is certainly authorized to construe the language of the order (or its modifications). . . . We also see no reason why an ordering CO resolving a dispute cannot apply the relevant provisions of the schedule contract, as long as their meaning is undisputed. . . . The dispute only need go to the GSA CO if it requires interpretation of the schedule contract's terms and provisions.

*Sharp Elec.*, 707 F.3d at 1374. The "application of this rule is not necessarily determined by how the parties frame the issues and does not prevent the [ordering] CO from construing the language of the order or to apply relevant provisions of the schedule contract as long as there is no dispute in their meaning." *Hewlett-Packard Co.*, ASBCA No. 57941, 13 BCA ¶ 35,366 at 173,550.

Here, DLT properly presented its claim to the Ordering CO because the dispute does not require interpretation of the Schedule Contract. According to the complaint, this dispute is about whether the Ordering Activity breached the Order's Bona Fide Needs Provision and Certification Provision by failing to exercise the options when there was a bona fide need, and failing to provide Certifications (SOF ¶ 10). Those issues pertain to the performance or the construction of the Order, and do not require any interpretation of the Schedule Contract.

In response, the Ordering Activity raises several meritless arguments about why—looking beyond how DLT frames the issue—this dispute may require interpretation of the Schedule Contract. First, the Ordering Activity speculates that this dispute may require interpretation of the Schedule Contract because its Annual Funding Provision may conflict with the Bona Fide Needs Provision by prohibiting renewal of an order (mot. at 10-11). However, the Ordering Activity has not raised a genuine dispute suggesting that the Annual Funding Provision even applies here because that provision only applies "[w]hen annual appropriated funds are cited on a maintenance order," (SOF ¶ 1), and the Ordering Activity has failed to even assert—let alone establish—that the Order cited annual appropriated funds (mot. at 10-11; SOF ¶ 5). In any event, instead of prohibiting renewal, the Annual Funding Provision mandated renewal of an order at the end of the fiscal year—if the maintenance was to continue (SOF ¶ 1). The Annual Funding Provision did require that a renewal cite the new appropriation (*Id*.). While not clearly

6

spelled out, it appears that the Ordering Activity may be inferring from that requirement that the Annual Funding Provision prohibited renewal when the agency used annually appropriated funds and there was no new appropriation (mot. at 10-11).  However, that prohibition would not be in dispute because the Anti-Deficiency Act, 31 U.S.C. § 1341 (ADA) prohibits such renewals.  *MACH I AREP Carlyle Center, LLC*, ASBCA No. 59821, 16-1 BCA ¶ 36,389 at 177,418 (quoting *Letter v. United States*, 271 U.S. 204, 207 (1926)).  Thus, while the Ordering Activity may frame the issue as whether the Bona Fide Needs Provision conflicts with the Annual Funding Provision, the Ordering Activity's true dispute is whether the Bona Fide Needs Provision conflicts with the ADA—which is an issue of statutory interpretation that does not require interpretation of the Schedule Contract.

Second, the Ordering Activity speculates that this dispute may require interpretation of the Schedule Contract because its Payment Provision may conflict with the Bona Fide Needs Provision by requiring the application of Federal Acquisition Regulation (FAR) 52.212-4, which in turn requires the application of the ADA (mot. at 12).  However, the Ordering Activity has not raised a genuine dispute suggesting that the Payment Provision required the application of FAR 52.212-4 here because the Payment Provision only required the application of FAR 52.212-4 to time-and-material and labor-hour orders—and not to FFP orders—and the Order was an FFP order (SOF ¶¶ 1, 5).  Moreover, the Ordering Activity has not raised a genuine dispute suggesting that the version of FAR 52.212-4 cited by the Payment Provision required the application of the ADA.  On the contrary, while the current version of FAR 52.212-4 requires the application of the ADA, 48 C.F.R. § 52.212-4(u)(1) (NOV 2021), the version of FAR 52.212-4 cited by the Payment Provision—namely the March 2009 version (SOF ¶ 1)— did not require the application of the ADA.  48 C.F.R. § 52.212-4 (MAR 2009).[3]  In any event, while the Ordering Activity may frame the issue as whether the Bona Fide Needs Clause conflicts with the Payment Clause, the Ordering Activity's true dispute once again is whether the Bona Fide Needs Provision conflicts with the ADA.

Third, the Ordering Activity argues that the BPA Transaction Software Agreement and the BPA Re-Use Provision may conflict with the Bona Fide Needs Provision and the Certification Provision (mot. at 12, 14).[4]  Even assuming without deciding that the

---

[3] Further, the current version of FAR 52.212-4 merely addresses when the government acquires a supply or service subject to an agreement requiring the government to indemnify others in violation of the ADA.  48 C.F.R. § 52.212-4 (u)(1).  The Ordering Activity has not raised a genuine dispute suggesting that that provision would apply here because it fails to even assert—let alone establish—that it acquired the software subject to an agreement requiring it to indemnify others (mot. at 12; SOF ¶ 5).

[4] Citing R4, tab 1 at 4-5, the Ordering Activity also claims that the BPA incorporates FAR 52.217-9 (Option to Extend the Term of Contract) (MAR 2000) (mot. at 13).

Ordering Activity is correct that the Order conflicted with the BPA, that would not support the conclusion that DLT should have presented its claim to the GSA CO because it merely would establish that this dispute requires interpretation of the BPA, and not the Schedule Contract. If—as is the case here—a claim raises a dispute requiring an interpretation of a BPA issued by a different DOD service than the ordering activity,[5] then the contractor should present that claim to the ordering activity. *Hewlett-Packard*, 13 BCA ¶ 35,366 at 173,551-52. That is because "for purposes of CDA jurisdiction, any interpretation required of the BPA terms must be viewed as an interpretation of [the orders] since those orders were the vehicles that formed the contracts." *Id*. at 173,552. Thus, DLT properly presented any disputes regarding BPA interpretation to the Ordering CO.

Fourth, the Ordering Activity speculates that this dispute may require interpretation of the Schedule Contract because its Order of Precedence Provision is essential to this dispute (mot. at 10). However, "we only resort to an order of precedence provision when there is an actual conflict or inconsistency between different contract provisions." *Gen. Dynamics-Nat'l Steel and Shipbuilding Co.*, ASBCA No. 61524, 22-1 BCA ¶ 38,067 at 184,826. As discussed above, the Ordering Activity has failed to raise a genuine dispute suggesting an actual conflict or inconsistency between any Schedule Contract provision and the Order. Therefore, the Ordering Activity has failed to raise a genuine dispute suggesting that the Order of Precedence Provision applies or is essential to this dispute.

Fifth, the Ordering Activity speculates that the Bona Fide Needs Provision requires interpretation of the Schedule Contract's product terms by calling into question whether the Ordering Activity used functionally similar products (mot. at 13). However, the Ordering Activity does not even cite any particular Schedule Contract provisions—let alone show that those provisions require interpretation (*id*.); *Sharp Elec.*, 707 F.3d at 1374. Because this dispute does not require interpretation of the Schedule Contract, DLT did not need to present its claim to the GSA CO in order to establish our jurisdiction.

---

However, the cited pages do not incorporate FAR 52.217-9 (R4, tab 1 at 4-5). In any event, any claim that any BPA FAR 52.217-9 conflicts with the Bona Fide Needs Provision would not be a basis for requiring DLT to present a claim to the GSA CO for the reasons discussed above.

[5] Recall that the BPA here was issued by the Army.

## II. We do not Possess Jurisdiction Over the Superior Knowledge Claim and the Fraudulent Inducement Claim Because Those are new Claims That DLT did not Present to the CO

We do not possess jurisdiction over the superior knowledge claim and the fraudulent inducement claim because those are new claims that DLT did not present to the CO. We do not possess jurisdiction to entertain a claim if it is a new claim that the appellant did not present to the CO. *Nassar Grp. Int'l*, ASBCA No. 58451 *et al.*, 19-1 BCA ¶ 37,405 at 181,831. While an appellant may introduce on appeal additional facts that do not alter the nature of the original claim, its appeal must be based upon a common or related set of operative facts to those presented to the CO. *Id*. A claim is new when it "presents a materially different factual or legal theory" of relief. *Id*. (quoting *Lee's Ford Dock, Inc. v. Sec'y of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017). Materially different claims will necessitate a focus on a different or unrelated set of operative facts. *Id*.

Here, DLT's superior knowledge claim and fraudulent inducement claim necessitate a focus on the Ordering Activity's pre-award failure to disclose, or misrepresentation of, its knowledge that it did not intend to exercise the options because those are essential elements of superior knowledge claims and fraudulent inducement claims. *CAE USA, Inc.*, ASBCA No. 58006, 13 BCA ¶ 35,323 at 173,390; *Supreme Foodservice GmbH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387 at 177,398. As a result, the complaint alleges in support of the superior knowledge claim and the fraudulent inducement claim that the Ordering Activity failed to disclose, or misrepresented, its knowledge that it intended to not exercise the options (SOF ¶ 10). However, that set of operative facts is different and unrelated to the set of operative facts presented to the CO because DLT's claim to the CO did not mention the Ordering Activity's pre-award failure to disclose, or misrepresentation of, its knowledge that it did not intend to exercise the options (SOF ¶ 8). Therefore, consideration of the Ordering Activity's pre-award representations of its knowledge of its intent regarding the options would alter the nature of the original claim, and the superior knowledge claim and the fraudulent inducement claim are materially different claims than the claims presented to the CO. *Nassar Grp.*, 19-1 BCA ¶ 37,405 at 181,831. Because they are new claims, we do not possess jurisdiction over the superior knowledge claim and the fraudulent inducement claim. *Id*.

## III. DLT's Estoppel Claim Must be Struck

We do not possess jurisdiction over DLT's "estoppel" claim to the extent that it seeks to estop the Ordering Activity from using functionally similar products when a bona fide need continues to exist because that seeks specific performance or injunctive relief, and the remainder of the claim does not belong in the complaint because it does not assert an independent basis for entitlement to relief. DLT's estoppel claim asserts

that the Ordering Activity should be estopped: (1) from arguing that the Bona Fide Needs Provision or the Certification Provision was a nullity; (2) from arguing that either was superseded by other contractual language; and (3) from using functionally similar products when a bona fide need continues to exist (SOF ¶ 10). The argument that the Ordering Activity should be estopped from using functionally similar products when a bona fide need continues to exist seeks specific performance or injunctive relief, so we do not possess jurisdiction over that portion of the claim. *Rig Masters, Inc.*, ASBCA No. 52891, 01-2 BCA ¶ 31,468 at 155,379. The remainder of the claim does not assert an independent basis for entitlement to relief, but is an argument about what the government should be allowed to argue. As such, it does not belong in the complaint as an independent count, though DLT is free to advance that argument at the proper time. Therefore, we strike DLT's estoppel claim.

## IV. DLT Plausibly Alleges Breach of Contract Claims

DLT plausibly alleges breach of contract claims. "To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to state a claim to relief that is plausible on its face." *K2 Sols., Inc.*, ASBCA No. 60907, 17-1 BCA ¶ 36,801 at 179,376 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While we do not accept legal conclusions as true, we must accept all factual pleadings as true. *Id*. Moreover, we draw all reasonable inferences in favor of the appellant. *Id*. The ultimate inquiry is whether the complaint alleges sufficient facts to nudge a claim across the line from conceivable to plausible. *Id*.

Here, the Ordering Activity first argues that DLT fails to plausibly allege a breach of contract claim because DLT failed to perform during either option year (mot. at 19). However, a party's nonperformance is excused by the other party's prior material breach. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 56358 *et al.*, 17-1 BCA ¶ 36,779 at 179,249. Thus, "[f]aced with two parties to a contract, each of whom claims breach by the other, courts will often impose liability on the party that committed the first material breach." *Id*. Here, the complaint plausibly alleges that the Ordering Activity materially breached the Bona Fide Needs Provision by failing to exercise the options before any failure by DLT to perform during the option years (SOF ¶ 10). Therefore, the complaint plausibly alleges that DLT's nonperformance during the option years was excused and we should impose liability on the Ordering Activity as the party committing the first material breach.

The Ordering Activity also argues that DLT fails to plausibly allege a breach of contract claim because damages for the second option year are too speculative (mot. at 19). That is an issue of damages that requires further factual development, and thus is not an appropriate basis for dismissing for failure to state a claim.

10

Finally, the Ordering Activity argues that DLT fails to state a breach of contract claim because an implied-in-fact contract cannot exist when it covers the same obligations as an express contract, and DLT's express contract expired (mot. at 20). As an initial matter, the complaint does not allege that there was an implied-in-fact contract (SOF ¶ 10). Instead, DLT asserts that the breach of the Bona Fide Needs Provision and the Certification Provision continued during the two option years, or the damages from the breaches of those provisions continued to accrue during the two option years (resp. at 31). That is a plausible claim. *See Force 3 LLC v. Dep't of Health and Human Servs.*, CBCA 6621, 2021 WL 1691457 (April 14, 2021). In any event, even if we were to liberally construe the complaint as alleging a breach of an implied-in-fact contract, an implied-in-fact contract may exist when an express contract expired under certain circumstances. *Lee v. United States*, 895 F.3d 1363, 1373 (Fed. Cir. 2018). Therefore, DLT has plausibly alleged a claim, and the motion to dismiss is denied.

CONCLUSION

For the foregoing reasons, the motion to dismiss for lack of jurisdiction is granted in part, and denied in part. We strike the superior knowledge claim, the fraudulent inducement claim, and the estoppel claim. The motion to dismiss for failure to state a claim is denied.

Dated: May 26, 2022

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63069, Appeal of DLT Solutions, LLC, rendered in conformance with the Board's Charter.

Dated:  May 31, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals